IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| TIM ANDREW GARDIPEE; BRUNO FRIIA; BRAD MOLNAR; and DAVID HELMERS, | CV 21–95–M–DLC |
| Plaintiffs, | ORDER |
| vs. | |
| STATE OF MONTANA; MONTANA DEPARTMENT OF FISH WILDLIFE AND PARKS; and MONTANA FISH & WILDLIFE COMMISSION, | |
| Defendants. | |

Before the Court is Plaintiffs' Application for Temporary Restraining Order and Order to Show Cause.[1]  (Doc. 10.)  Plaintiffs allege that they are disabled and that Defendants State of Montana, Montana Department of Fish, Wildlife & Parks ("FWP"), and Montana Fish & Wildlife Commission ("FWC") are violating the Americans with Disabilities Act (42 U.S.C. § 12101, *et seq.*) ("ADA"), the Rehabilitation Act of 1973 (29 U.S.C. § 701, *et seq.*), and the Montana Constitution (Mont. Const. art. IX, § 7; Mont. Const. art. II, § 35) by prohibiting Plaintiffs' use of crossbows during Montana's regular archery season.  (Doc. 12.)

---

[1] At the hearing held on August 31, 2021, the Parties agreed that Plaintiffs' Application should be treated as a request for a preliminary injunction because all Defendants received notice and an opportunity to be heard.  Fed. R. Civ. P. 65(a)(1).

1

Plaintiffs seek "immediate injunctive relief compelling Defendants to provide reasonable accommodation to Plaintiffs by allowing their use of crossbows during Montana's regular archery season commencing on September 4, 2021." (Doc. 10 at 2.) The Court set a hearing on Plaintiff's Application for August 31, 2021 at 1:30 p.m., ordered Plaintiffs to serve Defendants, and set August 27, 2021 as the deadline for Defendants to file a response. (Doc. 11.)

Defendants FWP and FWC filed a response indicating that they did not oppose Plaintiffs' request for injunctive relief. (Doc. 23.) Defendant State of Montana filed a notice of appearance on the deadline to respond but did not file a response. (Doc. 20.)

The Court concluded that it lacked subject matter jurisdiction over Plaintiffs' Application because the parties were not actually adverse, and the matter therefore did not present a case or controversy within the meaning of Article III. (Doc. 25.) Accordingly, the Court entered an Order on August 29, 2021 dismissing Plaintiffs' Application and vacating the hearing. (*Id.*)

On August 30, 2021, Plaintiffs filed an Emergency Motion to Reinstate Hearing or to Compel Defendants to Provide the Relief Requested and Agreed Upon in Docket No. 23. (Doc. 26.) The Motion and accompanying affidavits stated that Defendants FWP and FWC construed the Court's August 29 Order as denying Plaintiffs' request for injunctive relief, and FWP and FWC would not

2

permit Plaintiffs to hunt with a crossbow during Montana's 2021 Archery Only Season. (Docs. 26, 26-1, 26-2.) The same day, the Court issued an Order setting the matter for a hearing and ordering the Parties to be prepared to discuss the issues raised by Plaintiffs' motions for injunctive relief and their positions concerning why an order of the Court is necessary to permit Plaintiffs to hunt with crossbows during Montana's 2021 Archery Only Season. (Doc. 27.)

The Court held a hearing on Plaintiffs' Application (Doc. 10) and Emergency Motion (Doc. 26) on August 31, 2021. Counsel for Defendants FWP and FWC explained that FWP and FWC initially did not oppose Plaintiffs' Application because the regular administrative process for considering their requests for accommodations necessarily would extend beyond Montana's 2021 Archery Only Season even if Plaintiffs ultimately would be permitted to hunt with crossbows during the Archery Only Season in the future, but Defendants did not concede that Plaintiffs had met their burden to show entitlement to a preliminary injunction. Defendants clarified at the hearing that they disputed Plaintiffs' claims that Defendants had violated the law.

The Court heard testimony from Plaintiffs and two witnesses, Dr. Robert Zink and Dr. Albert Olszewski, and argument from Parties' counsel. Having considered all filings and evidence before the Court, the request for a preliminary injunction is denied.

3

## JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1331.  Based on Defendants'

representations and arguments at the hearing, the Court concludes that it has

subject matter jurisdiction over Plaintiffs' request for injunctive relief.  Despite

Defendants' initial non-opposition to Plaintiffs' request for injunctive relief (Doc.

23), Defendants explained the statutory restraints on their power to grant the

accommodations Plaintiffs sought before the conclusion of the 2021 Archery Only

Season, disputed that Plaintiffs have met their burden to show entitlement to a

preliminary injunction, particularly concerning the likelihood of success on the

merits on their ADA claims, and presented argument that the preliminary

injunction should not issue.  The Court therefore concludes that the Parties have

shown actual adversity on Plaintiffs' request for injunctive relief and, accordingly,

there is a case or controversy within the meaning of Article III before the Court.

*See United States v. Windsor*, 570 U.S. 744, 757–59 (2013).

## FACTUAL BACKGROUND

Montana's Constitution provides that "[t]he opportunity to harvest wild fish

and wild game animals is a heritage that shall forever be preserved to the

individual citizens of the state and does not create a right to trespass on private

property or diminution of other private rights."  Mont. Const. art. IX, § 7.  The

legislature enacted statutes "pertaining to lawful means of hunting, fishing, and

4

trapping . . . as adequate remedies for the preservation of the harvest heritage of the individual citizens of this state."  Mont. Code Ann. § 87-1-107.  Among other things, these statutes provide FWP and FWC with duties and powers concerning wildlife management, including the power to restrict certain hunting seasons to the use of specified hunting arms, such as establishing special archery seasons.  Mont. Code Ann. §§ 87-1-201(12)(a), 87-1-301(6)(a).  FWC is required by statute to publish its annual and biennial rules setting seasonal hunting regulations.[2]  *Id.* § 87-1-202(1).  FWC's rulemaking process also is subject to the Montana Administrative Procedure Act ("APA"), *id.* § 2-4-101, *et seq.*, which generally requires notice and an opportunity for interested members of the public to be heard for any proposed rule or proposed amendment to a rule, *id.* § 2-4-302, and provides for a legislative review process, *id.* § 2-4-402–412, and a judicial review process, *id.* § 2-4-506, for such rules.[3]

---

[2] Plaintiffs' Amended Complaint refers only to Montana's 2021 Deer, Elk, and Antelope regulations, but they allege that "the same restrictions and exclusions apply to all big game archery hunting in Montana."  (Doc. 12 ¶ 7 n.1.)  Because Plaintiffs bear the burden of proving their entitlement to a preliminary injunction and their Application focuses exclusively on these particular hunting regulations, the Court's discussion and analysis concerns only these regulations.

[3] Although the APA excludes FWP and FWC's annual or biennial seasonal hunting, fishing, and trapping regulations from its coverage, *id.* § 2-4-102(11)(b)(iv), the Court observes that FWC intends to issue a decision on Plaintiffs' requests for accommodation in October 2021 (Doc. 5, Ex. 2), which indicates that any rule it adopts would not be part of its annual seasonal hunting regulations, which in 2021 were adopted in February (Doc. 12-1 at 5).  The Court therefore agrees with Defendants' assertion that the APA would apply to any rule adopted in response to Plaintiffs' requests for accommodation.

5

At issue in this case is Defendants' prohibition on the use of crossbows during Montana's Archery Only Season. Although the dates of this season may vary by hunting district and by game animal, the 2021 Archery Only Seasons for antelope, deer, and elk will begin on September 4 and last for approximately two to six weeks; the general seasons likewise vary but generally run from October through November. (Doc. 12-1 at 7.) Some hunting districts allow general hunting to begin before and continue throughout the Archery Only Season; such off-season hunting is referred to as the shoulder season. (*E.g.*, *id.* at 57–61, 81–82.) By Commission Rule, FWP provides that a crossbow is not considered a hunting bow or lawful archery equipment during the Archery Only Season or in an Archery Equipment Only area or hunting district. (Doc. 12-1 at 17.) There is no evidence before the Court that Defendants have ever permitted the use of crossbows during Montana's Archery Only Season. FWP provides disabled hunters the opportunity to apply for a Permit to Modify Archery Equipment ("PTMAE"), which "allows a person with a disability to use archery tackle that supports the bow, and draws, holds, and releases the string to accommodate the individual disability." (Doc. 12-1 at 16.) A PTMAE "does not entitle the holder to use a crossbow during Archery Only Season." (*Id.* (emphasis in original).) Outside of Archery Only Season or Archery Equipment Only areas, the use of

6

crossbows is permitted unless specific hunting district regulations provide otherwise. (*Id.* at 18, 20.)

Plaintiffs are four individuals who wish to hunt with crossbows during Montana's Archery Only Season. Plaintiff Bruno Friia began using a recurve bow to compete and hunt in 1964. (Doc. 5 at 2.) He states that because of three rotator cuff surgeries, he cannot pull more than 30 pounds vertically or horizontally, which he states are physical requirements necessary to operate a recurve or compound bow. (*Id.*) He states that the modifications permitted by FWP's PTMAE are insufficient to accommodate his disability, but he can safely operate a crossbow. (*Id.* at 5.) He wishes to hunt during the Archery Only Season because it provides an early start, a longer hunting period, a more favorable climate, and a lower overall hunting population. (*Id.* at 3.) He asked FWP to grant him permission to use a crossbow during the Archery Only Season on May 13, 2021, but that request was denied on August 9, 2021. (*Id.*)

Plaintiff Lt. Col. Tim Andrew Gardipee, Ret., began hunting in 1968. (Doc. 6 at 3.) He testified at the hearing that he stopped bow hunting in 1998. He states that because of a neurological vaccine injury sustained in 2012, he is wheelchair-bound and can pull a maximum of 30 pounds. (*Id.* at 2.) He states that the modifications permitted by FWP are insufficient to enable him to archery hunt because he lacks necessary physical strength and capacity. (*Id.* at 6.) He wishes to

7

hunt during the Archery Only Season because it provides an early start and a longer hunting period, male deer, elk, and antelope are in rut, and "game has a sense of calm after not being pursued for several months[.]" (*Id.* at 4.) He asked FWP to grant him permission to use a crossbow during the Archery Only Season on July 21, 2021, but he has not received a response. (*Id.* at 4–5.)

Plaintiff David Helmers began bow hunting in 1968. (Doc. 7 at 3.) He states that because of several surgeries, he is unable to pull more than 8 pounds vertically or horizontally. (*Id.* at 2.) He testified at the hearing that he stopped bow hunting in 2005. He states he cannot safely operate the equipment approved by FWP for archery hunting "without expensive modifications that [he] cannot afford." (*Id.* at 5.) He wishes to hunt during the Archery Only Season because it provides an early start, a longer hunting period, a more favorable climate, and a smaller overall hunting population. (*Id.* at 3.) He asked FWP to grant him permission to use a crossbow during the Archery Only Season in 2011 and on May 26, 2021, and his 2021 request was denied on August 9, 2021. (*Id.* at 3–4.)

Plaintiff Brad Molnar began bow hunting when he was 12 years old. (Doc. 8 at 3.) He states that blunt force trauma from a horse accident caused him to be unable to hold the weight of an unmodified compound bow with his left arm fully extended or to pull 25 pounds horizontally. (*Id.* at 2–3.) He testified at the hearing that he last hunted during Montana's Archery Only Season in 2018. He states that

8

he cannot pull a compound bow set at 25 pounds of pull.  (*Id.* at 6.)  He testified at the hearing that a crossbow is functionally the same implement as a compound bow except for the cranking mechanism a crossbow uses to draw the arrow.  He is a Montana State Senator, and he sponsored SB 111 before the 67th Legislative Session in 2021, which proposed amendments to the Montana Code that would have permitted some disabled hunters to use crossbows during the Archery Only Season, among other amendments.  (*Id.* at 2–3, Ex. 1.)  The bill did not pass.  (*Id.* at 4–5.)  He wishes to hunt during the Archery Only Season because it provides a milder climate, and it would enable him to use the 2021 either sex archery tag for elk he drew.  (*Id.* at 3–5.)  He asked FWP to grant him permission to use a crossbow during the Archery Only Season on June 26, 2021, and his request was denied on August 9, 2021.  (*Id.* at 4.)

## LEGAL STANDARD

Plaintiffs' requested preliminary injunction requires them to "establish that [they are] likely to succeed on the merits, that [they are] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tip in [their] favor, and that an injunction is in the public interest."  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Plaintiffs must "make a showing on all four prongs"; a failure to carry their burden on any prong is fatal to their request.  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

"The basic function of a preliminary injunction is to preserve the *status quo* pending a determination of the action on the merits." *Chalk v. U.S. Dist. Ct. Cent. Dist. of California*, 840 F.2d 701, 704 (9th Cir. 1988). The status quo is "the last, uncontested status which preceded the pending controversy." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (quoting *Regents of the Univ. of Cal. v. Am. Broad. Cos.*, 747 F.2d 511, 514 (9th Cir. 1984)). Plaintiffs' Application, however, seeks relief beyond the status quo. Plaintiffs provide no evidence that Montana has ever permitted crossbow hunting during its Archery Only Season or that exemptions to that rule have been permitted in the past. Preliminary injunctive relief "which goes well beyond simply maintaining the status quo Pendente lite[] is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party." *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1979) (quoting *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976)). Such relief will not be granted "unless extreme or very serious damage will result" and will not issue "in doubtful cases[.]" *Id.* at 1115 (quoting *Clune v. Publishers' Ass'n of N.Y.C.*, 214 F. Supp. 520, 531 (S.D.N.Y. 1963), *aff'd*, 314 F.3d 343 (2d Cir. 1963)); *see also Chew v. Legislature of Idaho*, 512 F. Supp. 3d 1124, 1128 (D. Idaho 2021) ("[W]hat [Plaintiffs] seek here is a mandatory TRO because the status quo is for the legislative session to proceed without the accommodations sought.").

10

**ANALYSIS**

Plaintiffs have not shown that they are entitled to the preliminary injunction they seek.

## I.    Likelihood of Success on the Merits

As an initial matter, although Plaintiffs' Amended Complaint alleges violations of the ADA, the Rehabilitation Act, and the Montana Constitution, (Doc. 12), their argument in support of their Application focuses solely on the merits of their ADA cause of action, (Doc. 10 at 7–10), and the Court will do the same.

To prevail on a claim under Title II of the ADA, each of the Plaintiffs must show: "(1) he is a 'qualified individual with a disability'; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." *Weinreich v. Los Angeles Cty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997) (emphasis omitted) (quoting 42 U.S.C. § 12132). Title II of the ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or

11

activities provided by a public entity." 42 U.S.C. § 12131(2).  The definition of

"public entity" includes any State government and any department, agency, or

other instrumentality of a State.  42 U.S.C. § 12131(1).  A public entity must

"make reasonable accommodations in policies, practices, or procedures when the

modifications are necessary to avoid discrimination on the basis of disability,

unless the public entity can demonstrate that making the modifications would

fundamentally alter the nature of the service, program, or activity."  28 C.F.R.

§ 35.130(b)(7)(i).  The ADA does not require a covered entity to provide "the

accommodation [a plaintiff] requests or prefers," but rather "need only provide

some reasonable accommodation."  *Zivkovic v. S. Calif. Edison Co.*, 302 F.3d

1080, 1089 (9th Cir. 2002) (quoting *E.E.O.C. v. Yellow Freight Sys. Inc.*, 253 F.3d

943, 951 (7th Cir. 2001) (en banc)).  "[T]he determination of what constitutes

reasonable modification is highly fact-specific, requiring case-by-case inquiry."

*Crowder v. Kitagawa*, 81 F.3d 1480, 1486 (9th Cir. 1996).

Plaintiffs assert that Defendants are violating the ADA by not permitting

them to use a crossbow to hunt during Montana's Archery Only Season as a

reasonable accommodation for their disabilities.  (Doc. 10 at 7.)  They allege that

none of Defendants' existing exemptions from otherwise applicable hunting rules

is sufficient to enable them to participate in the Archery Only Season.  (*Id.* at 4.)

In support of this allegation, they submitted declarations averring the following:

12

(1) The Draw-Loc device approved by the State of Montana "is impossible or exceedingly difficult for individuals with these sorts of disabilities to operate in order to archery hunt[.]" (Doc. 4 at 3; *see also* Doc. 3 at 4 (repeating opinion nearly verbatim).)

(2) "Plaintiffs and similarly situated individuals cannot operate compound bows[,] even those the PTMAE features[,] and participate in State of Montana's archery season as effectively or safely as they could hunting with a crossbow." (Doc. 4 at 7–8.)

(3) "Compound bows with approved PTMAE equipment are difficult to pack, operate, and protect from inadvertent bumping because the assemblies are intricate and very sensitive." (Doc. 3 at 3.)

(4) Installing a Draw-Loc "typically adds two to three pounds to the weight of the bow, which generally already weighs two to three pounds." (*Id.*)

(5) Plaintiffs Friia, Gardipee, and Helmers each found that the "device modifications allowed by FWP . . . are insufficient to permit [them] to use approved equipment" because they "lack [the] necessary physical strength and capacity to perform required functions." (Doc. 5 at 5; Doc. 6 at 6; Doc. 7 at 5.)

(6) Plaintiff Friia is "not able to use even a modified compound bow because such bows require an ability to pull at a minimum 50 pounds to harvest

13

effectively within 30 yards" and he is "only able to pull 30 pounds or less[.]"
(Doc. 5 at 5.)

(7) Plaintiff Gardipee has "limited pull capacity – maximum 30 pounds[,]" and
his "doctor concluded that [he] cannot operate even a modified compound
bow[.]" (Doc. 6 at 2, 6.)

(8) Plaintiff Helmers "cannot pull more than 8 pounds vertically or horizontally
which are physical requirements necessary to operate a recurve or compound
bow[,]" and his "doctor concluded that [he] cannot operate even a modified
compound bow[.]" (Doc. 7 at 2, 6.)

(9) Plaintiff Molnar "cannot hold the weight of an unmodified compound bow
with [his] left arm fully extended or pull 25 pounds horizontally which are
physical requirements necessary to operate a recurve or compound bow of
hunting weight." (Doc. 8 at 2.)

Plaintiffs allege that they each submitted a request to FWP to use a crossbow
during Archery Only Season as a reasonable accommodation for their disabilities,
but FWP denied their requests. (Doc. 10 at 4.) They argue that permitting them to
use a crossbow to hunt during the archery season is a reasonable accommodation
for their disabilities and would not fundamentally alter the nature of the archery
season, as evidenced by "the vast majority of states" that "allow for this very

accommodation" and the existence of other accommodations Defendants provide to disabled hunters.  (*Id.* at 7–8.)

The Court finds that on this record, Plaintiffs have not shown that the "facts and law clearly favor" them on their ADA claims, as required to demonstrate entitlement to a preliminary injunction that alters the status quo.  *Anderson*, 612 F.2d at 1114.

First, Plaintiffs have not provided sufficient evidence to demonstrate that they are likely to succeed on their claim that their requested accommodation is necessary in light of the state's existing accommodations for hunters with disabilities.  FWP's PTMAE is an open-ended permit to "use archery tackle that supports the bow, and draws, holds, and releases the string to accommodate the individual's disability[,]" subject to only a few limitations, including the prohibition on crossbows. (Doc. 12-1 at 16–17.)  Plaintiff Friia testified that FWP provides a brochure created by the Montana Bowhunters Association to hunters who receive a PTMAE that lists permissible equipment options, a copy of which was entered as Court's Exhibit 1.  (Doc. 30.)  The Court finds that the information provided by FWP describes many modifications beyond the Draw-Loc device expressly rejected by Plaintiffs and their witnesses, including bow rests, mounts, and braces and mouth releases that individually or in combination could permit individuals to bow hunt despite physical limitations on lifting and pulling.  (*Id.*,

15

Court's Ex. 1.)  There is no evidence that Plaintiffs attempted to try any equipment modifications other than the Draw-Loc, and their hearing testimony about that device's flaws showed that it was difficult, but not impossible, to use.  On this record, the Court finds that Plaintiffs have shown that archery hunting without a crossbow may be "uncomfortable or difficult, but not beyond their capacity[,]" and thus their requested accommodation "might be reasonable but not necessary." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 682 (2001).

Although Plaintiffs rely heavily on *Badalamenti v. Louisiana Department of Wildlife and Fisheries*, 439 F. Supp. 3d 801 (E.D. La. 2020), to support their ADA claims, that case arose in a fundamentally different procedural posture—a motion to dismiss under Rule 12(b)(6)—than the present case; the *Badalamenti* court concluded that "the reasonableness of Plaintiff's accommodation request or his ability to utilize other accommodations are inappropriate inquiries at the motion to dismiss stage."  *Id.* at 808.  Here, by contrast, Plaintiffs bear the burden of showing that the law and facts "clearly favor" their position.  *Anderson*, 612 F.2d at 1114. Particularly in light of the fact-intensive inquiry required to determine what accommodations are reasonable, Plaintiffs have failed at this preliminary stage to present facts that clearly favor their assertion that use of a crossbow is a reasonable and necessary accommodation, as required to demonstrate a likelihood of success on their ADA failure-to-accommodate claims.  28 C.F.R. § 35.130(b)(7)(i).

16

Second, the Court further finds that Plaintiffs have failed to show that their claims would survive an obvious affirmative defense: that permitting their use of crossbows would "fundamentally alter the nature of the . . . activity" of Montana's Archery Only Season.  28 C.F.R. § 35.130(b)(7)(i).  Plaintiffs characterize the "nature of the archery season" as "enabling hunters to harvest a game animal with an arrow rather than a rifle and bullet."  (Doc. 10 at 7.)  The evidence before the Court shows otherwise.  FWP's 2021 regulations provide that a hunting bow "must be a device for launching an arrow, which derives its propulsive energy solely from the bending and recovery of two limbs"; it "must be hand-drawn by a single and direct uninterrupted pulling action of the shooter"; "[t]he bowstring must be moved from brace height to the full draw position by the muscle power of the shooter's body"; "[t]he energy used to propel the arrow shall not be derived from any other source such as hydraulic, pneumatic, mechanical, or similar devices"; hunters must hold the bow with one hand and use the other hand to draw the bowstring; and "[t]he bowstring must be moved and/or held at all points in the draw cycle entirely by muscle power of the shooter until release."  (Doc. 12-1 at 17.)  FWP's 2021 regulations further provide that crossbows are not lawful archery equipment alongside "[a]ny device with a gun-type stock or incorporating any device or mechanism that holds the bowstring at partial or full draw without the shooter's muscle power[,]" "[a]ny bow for which a portion of the bow's riser

17

(handle) or any track, trough, channel, or other device that attaches directly the bow's riser contacts, supports, and/or guides the arrow rearward of the bow's brace height[,]" and "[e]lectric or battery-powered devices attached to a hunting bow or arrow that aides in the taking or locating of any game animal or game bird." (*Id.*) Disabled hunters with PTMAEs are exempted only from the requirement of holding or shooting the bow with their hands. (*Id.*)  In sum, participating in Montana's Archery Only Season *requires* muscle power (of the arms or otherwise) and generally forbids artificial enhancements to the archer's muscle power.  In contrast, a crossbow does not require the hunter to pull a string at all.  (Doc. 24 at 8.)  At this preliminary stage, based on the record presented by Plaintiffs, the Court finds that the alteration to the status quo they request is more akin to "changing the diameter of [a golf] hole from three to six inches"—or, more analogously, permitting a golfer to use a club that performs the swinging action for him—than permitting a golfer to use a cart instead of walking between holes, and their requested accommodation thus likely "constitute[s] a fundamental alteration" to the activity of hunting in Montana's Archery Only Season.  *PGA Tour, Inc.*, 532 U.S. at 682–83.

Third, the Court observes that in 2004, the Department of Interior considered and rejected a claim by an allegedly disabled hunter that FWP's refusal to grant him permission to hunt with a crossbow during Montana's Archery Only Season

violated Title II of the ADA or the Rehabilitation Act.  (Doc. 30, Defs.' Ex. 1.)
The Department observed that "[h]unting with a crossbow in the State is not
prohibited entirely; the weapon's use is merely restricted"; "there is no evidence
that Montana's restrictions on the use of the crossbow during archery [season]
discriminate against persons on the basis of disability, particularly since such use is
prohibited by regulation and applies equally to members of the public"; and "there
is no evidence that Montana's restrictions on the use of the crossbow deny
qualified disabled persons an effective opportunity to participate in Montana's
hunting program." (*Id.* at 2.)  The Department concluded that "[n]either the
[Rehabilitation] Act nor the ADA requires the State of Montana to eliminate
restrictions on the use of the crossbow as a special accommodation for people with
disabilities." (*Id.*)  Although the Department's determination is not binding on the
Court, it casts serious doubt on Plaintiffs' likelihood of success on the merits of
their ADA claims.

Accordingly, the Court concludes that Plaintiffs are not entitled to a
preliminary injunction because they have failed to show a likelihood of success on
the merits.

## II.   Irreparable Injury

Plaintiffs must show that "irreparable injury is *likely* in the absence of an
injunction." *Winter*, 555 U.S. at 22.  They have not done so.

19

Plaintiffs argue that they are irreparably injured because they are "deprived of their constitutional right to participate in" Montana's 2021 archery season by Defendants' prohibition on the use of crossbows during that season. (Doc. 10 at 10–11.) They assert—without citation to any supporting evidence or authority—that "[t]here are no guarantees that their health or ability to hunt in any fashion, even with a crossbow, will hold long enough to ensure participation in future archery hunting seasons." (*Id.* at 11.) Plaintiffs' declarations and testimony shed additional light on their reasons for wanting to participate in the Archery Only Season in particular: it provides a longer hunting season, it occurs during better weather, it offers opportunities to hunt with companions, it restricts the hunting population to lower levels, and game may be more vulnerable and easier to hunt. For several reasons, the Court concludes that Plaintiffs have not demonstrated irreparable harm, but even if they had done so, it is not the "extreme or very serious damage" required to show entitlement to a preliminary injunction that will alter the status quo. *Anderson*, 612 F.2d at 1115.

First, the Court rejects Plaintiffs' argument that their inability to hunt with a crossbow during the Archery Only Season is a constitutional deprivation. The constitutional provision they cite (Doc. 10 at 11) states that "[t]he opportunity to harvest wild fish and wild game animals is a heritage that shall forever be preserved to the individual citizens of the state and does not create a right to

20

trespass on private property or diminution of other private rights."  Mont. Const.

art. IX, § 7.  Plaintiffs cite no authority—and the Court could find none—for the

proposition that this constitutional provision, which is itself expressly limited and

is intended to be *preserved* by the state's statutes and regulations, Mont. Code

Ann. § 87-1-107, guarantees them the right to hunt in precisely the time, place, and

manner they wish.  To the extent Plaintiffs invoke the Montana Constitution to

imply that the Court should presume irreparable injury, *see Klein v. City of San

Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009), the Court declines to do so.

Second, weighing significantly against Plaintiffs' assertion of irreparable

injury is their delay in seeking this relief.  A "long delay before seeking a

preliminary injunction implies a lack of urgency and irreparable harm."  *Oakland

Trib., Inc. v. Chron. Pub. Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985).  According to

their hearing testimony, none of the Plaintiffs has participated in the Archery Only

Season since 2018; Mr. Helmers has not participated since before 2011, Mr. Friia

and Mr. Molnar since 2018, and Mr. Gardipee since 1998.  Although Plaintiff

Molnar averred that he hoped the legislature would permit the relief Plaintiffs seek

before his proposed bill, S.B. 111, failed to pass the legislature, a bill introduced in

2021 does not excuse the delay or explain Plaintiffs' decision to limit their hunting

to the general and shoulder seasons without seeking judicial relief for two—or

*twenty*—of the preceding years.  (Doc. at 4–5.)  A delay of mere months can belie

a claim of irreparable injury, *Garcia v. Google, Inc.*, 786 F.3d 733, 746 (9th Cir. 2015), particularly where, as here, "ample alternative" options for pursuing the activity Plaintiffs seek exist, *Utah Gospel Mission v. Salt Lake City Corp.*, 316 F. Supp. 2d 1201, 1221–22 (D. Utah 2004), *aff'd*, 425 F.3d 1249 (10th Cir. 2005). Although delay is less probative on the issue of irreparable harm "in the context of ongoing, worsening injuries[,]" *Arc of Calif. v. Douglas*, 757 F.3d 975, 990 (9th Cir. 2014), Plaintiffs present no evidence to support an assertion that injuries resulting from their inability to participate in Archery Only Season without permission to use crossbows have worsened from year to year.

Third, the Court acknowledges that compensatory relief after a trial on the merits cannot fully redress the intangible losses Plaintiffs allege by being unable to hunt with crossbows during the 2021 Archery Only Season, which include experiences they would have shared with loved ones, more favorable weather they would have enjoyed, a longer overall hunting season, a lower overall hunting population with which to compete for game, and easier hunting experiences. *Chalk*, 840 F.2d at 710 (observing that emotional and psychological injury "cannot be adequately compensated for by a monetary award after trial" and delay in reinstating teacher with HIV to classroom work "represents precious, productive time irretrievably lost to him" because virus at that time was fatal).  The Court does not doubt the sincerity or subjective significance of these alleged losses.  But

22

that finding does not necessitate a finding that the harm is irreparable. The Court doubts that the temporary loss of discrete recreational opportunities is sufficient to find irreparable harm warranting preliminary injunctive relief absent evidence that declining to enter an injunction would frustrate the Court's ability to grant relief to Plaintiffs should they prevail after a trial on the merits. *See Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 573–74 (5th Cir. 1974) (reversing grant of preliminary injunctive relief where district court did not find that harm to recreational opportunities from artificial lake's drawdown could not be repaired by refilling lake); *see also Anderson v. U.S.F. Logistics (IMC), Inc.*, 274 F.3d 470, 478 (7th Cir. 2001) (finding no irreparable injury where plaintiff was prohibited by employer from using religious language with customers for "[a] few more months" pending trial and previously had complied with prohibition for almost a year). Although Plaintiffs will not be able to hunt with a crossbow during the 2021 Archery Only Season under the status quo, they have not demonstrated that this harm will preclude the Court from granting effective relief on their claims in the future if they prevail after a trial on the merits.

Moreover, even if Plaintiffs' injuries resulting from the inability to crossbow hunt during the 2021 Archery Only Season are irreparable, the Court finds that Plaintiffs' alleged harms are far from certain, and ample alternative opportunities exist to pursue their goals. One need not pursue game himself to spend time with

23

companions as they hunt over the next two to six weeks; the weather on any given day during the Archery Only Season may be as favorable or unfavorable as the general and shoulder seasons in which crossbow hunting is permitted; and hunting districts that permit general hunting during the Archery Only Season or less popular or underutilized areas for hunting could provide an escape from the crowds and access to game animals less cautious about hunters in pursuit.  Most significantly, crossbows are prohibited for only a narrow timeframe within Montana's hunting seasons, and they are not prohibited during this timeframe in all hunting districts.  (Doc. 12-1 at 7, 17, 57–61, 81–82.)  Despite Plaintiffs' naked assertion in their Application that "[t]ime is of the essence for these Plaintiffs[,]" (Doc. 10 at 11), there is no evidence in the record that any of the Plaintiffs is likely to lose the ability to hunt with a crossbow before the general hunting season or the 2022 Archery Only Season begins.  *See Chalk*, 840 F.2d at 710 (relying on then-fatal prognosis of HIV infection).  As a result, even to the extent Plaintiffs have demonstrated irreparable intangible injury resulting from the inability to participate in the 2021 Archery Only Season, "the Court views this harm to carry minimal weight in the four-part test for injunctive relief" because "there are alternative means" for Plaintiffs to engage in crossbow hunting and attain the goals they would have pursued during that time.  *Tracy Rifle & Pistol LLC v. Harris*, 118 F. Supp. 3d 1182, 1192–93 (E.D. Cal. 2015), *aff'd*, 637 F. App'x 401 (9th Cir. 2016).

24

In sum, the Court concludes that Plaintiffs have not met their burden to show that "extreme or very serious damage will result" in the absence of a preliminary injunction that will alter the status quo. *Anderson*, 612 F.2d at 1115. But even assuming they had done so, the Court assigns little weight to the injuries alleged because of the alternative crossbow hunting opportunities available to Plaintiffs.

## III.    Balance of Equities and Public Interest

The final two *Winter* factors are the balance of the equities and the public interest; "[w]hen the government is a party," these factors "merge." *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 668 (9th Cir. 2021). The Court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (quoting *Amoco Production Co. v. Village of Gamble*, 480 U.S. 531, 542 (1987)). The Court also must "pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Id.* (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)). The Court finds that the balance of equities tips in the Defendants' favor, and a preliminary injunction is not in the public interest.

Plaintiffs' arguments concerning the hardships they will suffer if the preliminary injunction does not issue repeat their arguments concerning irreparable harm. (Doc. 10 at 11.) They further argue that Defendants' injury is limited to "a

few game animals, assuming Plaintiffs are even successful in filling their tags."
(*Id.* at 12.)  Plaintiffs further assert that the public interest favors an injunction
because it would prohibit Defendants' allegedly discriminatory practice.

At the hearing, Defendants explained that FWP and FWC's process for
considering Plaintiffs' requests to use crossbows requires compliance with the
agencies' implementing statutes and the APA.  Proposed rules require advance
notice and time to provide an opportunity for interested persons to submit data,
views, or arguments on the proposed rule, and proposed rules "of significant
interest to the public" require a hearing.  Mont. Code Ann. § 2-4-302.  Rules are
then subjected to a legislative review process and may also be challenged in court.
*Id.* §§ 2-4-402–412, 2-4-506.  The record shows that Plaintiffs' requests will be
considered at the next meeting of the FWC in October 2021.  (*E.g.*, Doc. 5, Ex. 2.)

The Court finds that issuing the injunction Plaintiffs request would result in
several harms to Defendants and to the public interest beyond the take of a few
game animals.  First, it would eliminate the opportunity for public transparency
and input on the use of crossbows during Archery Only Season, which the
administrative process permits.  Mont. Code Ann. § 2-4-302.  This harm is
particularly weighty in light of the facts that the accommodation Plaintiffs seek has
never been permitted by FWP or FWC, and it quite recently failed to earn majority
support in the legislature.  (Doc. 8 at 4–5); *see Utah Gospel Mission*, 316 F. Supp.

2d at 1223 ("[T]o grant an injunction would undermine the public process by nullifying the decision of the City's elected officials. . . . [I]t would not be in the public interest to set this process aside.").

Second, it would place the decision whether to permit disabled hunters to use crossbows during Archery Only Season in the hands of a judge whose only basis for decision is a two-week-old district court record rather than the FWC Commissioners, who undoubtedly have a deeper and broader knowledge of the myriad concerns ranging from game management to hunter safety implicated by Plaintiffs' request, which may require alteration to an unknown number of Defendants' interrelated laws, regulations, and enforcement practices.  Mont. Code Ann. § 87-6-401(1)(e); *GeorgiaCarry.Org, Inc. v. U.S. Army Corps of Engineers*, 38 F. Supp. 3d 1365, 1379–80 (N.D. Ga. 2014) ("Defendant Army Corps would not just have to change its rule on firearms, it would have to remold the entire regulatory framework governing recreation at recreational facilities."), *aff'd*, 788 F.3d 1318 (11th Cir. 2015); *M.R. v. Dreyfus*, No. C10-2052Z, 2011 WL 31553, at *11 (W.D. Wash. Jan. 5, 2011) ("The Court is in no position to substitute its judgment for that of DSHS concerning" agency's decisions where agency "applied its expertise in weighing the competing interests of the various clients it serves."); *see also Tracy Rifle & Pistol LLC*, 118 F. Supp. 3d at 1194–95 ("Granting the injunction would alter the status quo by requiring California to alter its regulatory

27

scheme and practices as they pertain to firearms.  Therefore, the Court takes the requisite caution in deciding against altering the status quo.").

Third, despite Plaintiffs' reassurances that they are only four hunters whose take would be minimal in the grand scheme of Montana's Archery Only Season, there is no evidence before the Court concerning the number of disabled hunters in Montana who may come to court to seek the same relief or other exemptions to Defendants' otherwise applicable regulations on permissible archery equipment. "If the Court were to order departure from the [status quo] approach in this case, where would it draw the line in the future?"  *The Nation Magazine v. Dep't of State*, 805 F. Supp. 68, 74 (D.D.C. 1992) (finding that entry of temporary restraining order requiring agency to depart from first-in, first-out approach to FOIA requests was not in public interest).

In balancing the equities and considering the public interest, the Court considers "[t]he costs of being mistaken[] on the issue of whether the injunction would have a detrimental effect" on Defendants and the public's interest as weighed against "the cost of continued compliance" with the challenged regulations by the Plaintiffs.  *Tracy Rifle & Pistol LLC*, 118 F. Supp. 3d 1193–94. In balancing the equities, the Court may also consider the Plaintiffs' delay in pursuing this lawsuit, which "created the need for the emergency relief" they seek. *Kishore v. Whitmer*, 972 F.3d 745, 751 (6th Cir. 2020); *Hawai'i Cty. Green Party*

28

*v. Clinton*, 980 F. Supp. 1160, 1169 (D. Haw. 1997) ("Plaintiffs had the opportunity to bring this suit to the court without the need for immediate injunctive relief, and failed to do so.").

At bottom, Plaintiffs ask the Court to step into the unknown by requesting preliminary injunctive relief that alters the status quo.  The Court does not discount the significance of preventing irrational and unlawful discrimination on the basis of disability, nor does it discount the personal significance of hunting during the Archery Only Season to Plaintiffs.  However, upon weighing these considerations against the limited duration and scope of Defendants' crossbow prohibition, Plaintiffs' delay in seeking relief, the loss of opportunity for public input and the FWC's expertise in setting Montana's hunting regulations if an injunction were to issue, and the unknown consequences of creating new exceptions to those regulations, the Court finds that the balance of the equities and the public interest tip decisively in Defendants' favor and do not support entry of a preliminary injunction.

## CONCLUSION

Plaintiffs have not met their burden of establishing any of the factors required to prove their entitlement to the extraordinary relief of a preliminary injunction that alters the status quo.

Accordingly, IT IS ORDERED that Plaintiffs' Application for Temporary Restraining Order and Order to Show Cause (Doc. 10) and Plaintiffs' Emergency Motion to Reinstate Hearing or to Compel Defendants to Provide the Relief Requested and Agreed Upon in Docket No. 23 (Doc. 26), which the Parties agreed to treat as a Motion for a Preliminary Injunction after receiving notice and an opportunity to respond, are DENIED.

Once the Defendants have answered the Complaint, the Court will set this matter for a scheduling conference at which time appropriate deadlines and a trial date will be established.

DATED this 3rd day of September, 2021.

Dana L. Christensen, District Judge
United States District Court

30