Bruce A. Fredrickson
Angela M. LeDuc
Rocky Mountain Law Partners, P.C.
1830 3rd Avenue East, Suite 301
P. O. Box 1758
Kalispell, MT 59903-1758
Telephone:  (406) 314-6011
Facsimile:  (406) 314-6012
E-mail:      bruce@rmtlawp.com
             angie@rmtlawp.com

Chris J. Gallus
CHRIS J. GALLUS LAW, PLLC
1423 Otter Road
Helena, MT  59602
Telephone:  (406) 459-8676
E-Mail:      chrisjgalluslaw@gmail.com

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| TIM ANDREW GARDIPEE; BRUNO FRIIA; BRAD MOLNAR; DAVID HELMERS, All Individually,<br><br>    Plaintiffs,<br><br>    vs.<br><br>STATE OF MONTANA; and MONTANA DEPARTMENT OF FISH WILDLIFE AND PARKS, and MONTANA FISH & WILDLIFE COMMISSION<br><br>    Defendants. | 9:21-cv-00095-DLC-KLD<br><br>**SECOND AMENDED COMPLAINT** |

COME NOW Plaintiffs, Lieutenant Colonel Tim Andrew Gardipee, Retired ("Lt. Col. Gardipee"), Bruno Friia ["Mr. Friia"], Brad Molnar ["Mr. Molnar"], and David Helmers ["Mr. Helmers"], [collectively "Plaintiffs"] with their Second Amended Complaint against Defendants, State of Montana and Montana Department of Fish, Wildlife and Parks ["FWP"] and Montana Fish & Wildlife Commission ["Commission"] [collectively, Defendants are referred to as the "State" or "Defendants"] for violations of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., the Federal Rehabilitation Act of 1973, 29 U.S.C.A. 701, et seq., Mont. Const. Art. IX, Sec. 7, Art. II, Sec. 10 & 35, together with other violations of law as they otherwise pertain to Plaintiffs' liberties as guaranteed by the United States and Montana Constitutions.  Plaintiffs complain, allege and aver as follows:

## INTRODUCTION

1.      All disabled Americans and all disabled Montanans are protected from exclusion and from being denied benefits conferred by government that substantially limits one or more major life activities when reasonable accommodation can restore their rights to liberty and provide them meaningful access to programs available to the public, including the right to hunt and harvest game animals.  Mont. Const., Art. IX, Sec. 7; 42 U.S.C. § 12101, et seq.  Montana

veterans are also allowed constitutionally protected "special provisions" as may be provided by the Legislature.  Mont. Const., Art. II, Sec. 35.

2.     The Plaintiffs' right of privacy, guaranteed by Art. II, Sec. 10 of the Montana Constitution, is a self-executing right, and extends to informational privacy associated with the use, or misuse of sensitive or confidential medical information.

3.     The State receives federal funds through the Federal Pittman-Robertson Restoration Act and spends them on these programs.  16 U.S.C.A, §§ 669 et seq.  Hunting is a Montana tradition and is an aspect of Montana societal norms.  Hunting is a major life activity to those who enjoy the sport.  FWP provides through its employees and citizen commission, stewardship for all Montana's recreational resources, while contributing to the quality of life for present and future generations.  Montana's constitution guides FWP's mission. Unique among states, Montana citizens overwhelmingly supported amending their constitution to preserve Montana's game harvest heritage, making the opportunity to harvest wild fish and wild game animals a constitutional right, which shall forever be preserved for the individual citizens of the state.  Mont. Const. Art. IX, Sec. 7; see also, Mont. Code Ann., § 87-1-107.  Montana further constitutionally recognizes individual dignity and the sacrifices of military personnel, including veterans, and especially disabled veterans.  Mont. Const. Art. II, Sec 35.  The act

of hunting constitutes the right, not of just doing things associated with hunting, itself, but also with the associated comradery.

4.     The Montana Legislature vested FWP, along with the Commission with duties and rulemaking authority to, among other things, define annual hunting seasons, regulate allowable hunting weaponry, and to define classes of hunters, including making accommodations for disabled hunters.  Mont. Code Ann., §§ 87-1-101 & 201.

5.     The Montana Legislature recognizes that persons with disabilities are allowed certain exemptions from otherwise established hunting rules, including, among other accommodations, the ability to hunt and shoot from a vehicle and shooting a firearm from the "shoulder, berm, or barrow pit right-of-way of a public highway."  Mont. Code Ann., § 87-2-803.

6.     FWP recognizes that persons with disabilities are allowed certain exemptions from otherwise established hunting rules, including, among others, the same accommodations referenced in the preceding paragraph.  Mont. Admin. R. 12.3.106 (2000).

7.     Neither Mont. Code Ann., § 87-2-803, nor Mont. Admin. R. 12.3.106 expressly allows or prohibits the use of a crossbow by disabled archers during the regular archery season.

8.      One season does not substitute for another as a means of reaching an accommodation.  Put simply, the right to use a crossbow during rifle season is not an accommodation for archery season.

9.      The Commission is required to publish annual and bi-annual rules setting out hunting regulations.  The Commission did that for the 2021 Deer, Elk and Antelope seasons, a true and correct copy of which is attached hereto as EXHIBIT 1 (2021-dea-regulations-final-for-web.pdf@mt.gov).[1]

10.     The 2021 Deer, Elk and Antelope rules published by the Commission expressly prohibit the use of a crossbow during the regular archery season.  Ex. 1, pp. 22 & 25.  No exceptions are made for disabled individuals whose disability prevents them from using a "longbow, flatbow, recurve bow, compound bow, or any combination of these designs," that are expressly allowed by FWP during the regular archery season.  Ex. 1, p. 22.

11.     Mont. Code Ann., § 87-6-401(e), makes it a criminal offense to "use archery equipment that has been prohibited by rule of the commission."

12.     A person found guilty of such an offense may be subject to monetary fines, jail time, and loss of hunting and fishing privileges.

---

[1] Only Deer, Elk and Antelope 2021 regulations are referenced herein.  However, the same restrictions and exclusions apply to all big game archery hunting in Montana.

13.     Archery hunting is the sort of activity described in 28 C.F.R.

§ 35.104(3).

14.     Nearly every State permits some way for disabled hunters to use a

crossbow to hunt during their respective archery seasons, yet none of them offer

the same constitutional level protections that Montana purports to provide while

banning these devices.

15.     Plaintiffs are all among a class of disabled Montana citizens who,

because of their disabilities, are unable to participate in Montana's regular archery

hunting season because they cannot physically operate archery equipment that is

expressly allowed by FWP.  They can, however, operate crossbows that are

expressly prohibited during Montana's archery hunting season.  See Declaration of

LTC Tim Andrew Gardipee (Ret.) ["Docket No. 6"]; Declaration of Bruno Friia

["Docket No. 5"]; Declaration of Brad Molnar ["Docket No. 8"]; and Declaration

of David Helmers ["Docket No. 7"].

16.     Despite the important status of hunting to every Montana hunter and

Montana's outdoor and hunting culture, the State of Montana through FWP

implemented and enforces rules and regulations that discriminate against and

exclude Plaintiffs and other similarly situated disabled individuals by precluding

them from enjoying a major life activity, participation in archery hunting because

of their disabilities.  Because of their disabilities, Plaintiffs have each been

deprived of the ability to engage in other major life activities that would allow them to hunt during the regular archery season.2  Lt. Col. Gardipee cannot kneel or stand, both of which are essential and major life activities necessary to operating archery equipment allowed by the State and FWP.  (Doc. No. 6 at ¶ 5).  Because of their disabilities, none of the Plaintiffs possess the physical strength to use archery equipment authorized by FWP.  (Doc. No. 6 at ¶ 5; Doc. No. 5 at ¶¶ 3-5; Doc. No. 8 at ¶ 3-4; Doc. No. 7 at ¶ 3-5).  Kneeling, standing, pulling, and the like, are major life activities that Plaintiffs no longer enjoy.  The deprivation of those day-to-day activities resulted from their injuries.  The cause of that deprivation should not then result in the loss at the hand of the State of their ability to participate in a constitutionally protected right - the right to hunt - by the State and FWP's refusal to provide reasonable accommodations.  Neither the State of Montana nor FWP has provided reasonable accommodations to disabled individuals who are, as a result of their disabilities, physically unable to operate archery equipment allowed by FWP and Commission regulations.

17.    Legislation (SB 111) was proposed during the 2021 Montana Legislative Session that would have provided reasonable accommodation to

---

[2] Under the ADA, "major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."  42 U.S.C. § 12102(2)

Plaintiffs and other similarly situated disabled Montanans who are unable as a result of their disabilities to use accepted archery equipment and would have allowed the use of crossbows during Montana's regular archery season. A true and correct copy of SB 111 is attached hereto as EXHIBIT 2. SB 111 was defeated thereby precluding the Legislature's ability to rectify a wrong and exercise its responsibility to provide reasonable accommodations under the ADA.

18.    Each Plaintiff owns or is able and willing to purchase alternative archery equipment - crossbows - that they can physically use to participate in Montana's archery season. Each Plaintiff made a reasonable accommodation request to FWP for permission to use this equipment in Montana, but Defendants promptly denied each request without thorough evaluation or review. True and correct copies of Plaintiffs' requests and FWP's Denial Letters are attached to each of the Plaintiffs' Declarations. Plaintiffs Molnar and Friia also submitted a complaint regarding the same ADA issue to the United States Department of Justice ["USDOJ"]. Their complaints were ultimately referred by the USDOJ to the United States Department of Interior. To date no action has been taken on those Federal complaints. Further requests to Defendants for reasonable accommodations that would allow Plaintiffs and other similarly situated disabled individuals to enjoy their Constitutionally protected right to hunt would be a fruitless effort, especially as those requests relate to the 2021 archery season.

19.     Montana's 2021 regular archery season commenced on September 4, 2021, and closed on October 8, 2021.  Ex. 1, p. 11.  Its proposed 2022 season commences on September 3, 2022 and closes on October 16, 2022.

20.     At the Show Cause Hearing that occurred on August 31, 2021, counsel for Defendant Fish Wildlife and Parks and the Montana Fish and Wildlife Commission represented to the Court, that the purpose of its October 28, 2022 meeting was to consider "overturning its original rule [prohibiting crossbows] through a process to create this [type of] permit."  See, August 31, 2021 Hearing Transcript excerpts attached hereto as EXHIBIT 3 at pp. 13, l. 16 - 14, l. 5.  This representation was in line with statements made to the Plaintiffs after Defendants denied their earlier accommodation requests; specifically, that the Commission was indeed planning to evaluate a rule change to generally allow crossbows as a reasonable accommodation for disabled individuals who are unable to use other devices allowed by the PTMAE.  See¸ e.g., letters from Hank Worsech to Brad Molnar and Bruno Fria dated August 9, 2021 attached hereto as EXHIBIT 4.

21.     Plaintiffs believed that intent at the October 28, 2021 Commission meeting was indeed for the purpose of at initiating discussion of a rule change associated with the disabled's ability to use crossbows during archery season.

They accordingly personally appeared at the meeting prepared to testify in favor of the rule change.3

22.     Instead of evaluating whether a change in the rule prohibiting the use of crossbows during archery season was warranted, Defendants instead utilized the meeting as a pretext to purportedly once again review each of the four individual Plaintiff's requests to use a crossbow as a reasonable accommodation for their disability, this time in a very public forum.  As a result, a decision typically made internally by FWP employees and Commission members, instead was made against Plaintiffs yet again, in a public forum without Plaintiffs' prior knowledge or consent.  Plaintiffs' personal medical information was openly disclosed and questioned in a fashion that enabled other members of the public to hear it and comment on it, and each Plaintiff was publicly humiliated and embarrassed as a result.

23.     Plaintiffs are unaware of any other public meetings held by the Commission for the express purpose of considering an individual applicant's request for accommodation, where that request is necessarily accompanied by the disclosure of specific, personal and confidential medical issues unique to the applicant.  In fact, Mont. Code Ann., § 2-3-203 lists the circumstances under which

---

[3] The October 28 meeting was also well attended by members of the public, the vast majority of whom spoke either in favor of or against a rule change as opposed to Plaintiffs' request for accommodation.

a public meeting may be closed, and includes closing meetings to the public during the time the discussion relates to a matter of individual privacy if the demands of individual privacy exceed the merits of public disclosure.  Although this right may be waived by the individual about whom the discussion pertains, Plaintiffs provided no such waiver in this case.  Considering their applications had already been reviewed and denied, allowing the public to subsequently participate or weigh in on the Plaintiffs' individual disabilities before yet another denial served no purpose other than to humiliate and embarrass each of them.

24.     Defendants' treatment of the Plaintiffs, and all other disabled individuals presently unable to operate allowed archery equipment, seeking to archery hunt in Montana violates federal and state anti-discrimination laws.  The ability to hunt during the archery season is a major life activity afforded by the State and guaranteed by Montana's constitution of which Plaintiffs have been deprived.  Therefore, Plaintiffs now seek injunctive, declaratory and additional relief including damages (compensatory and nominal), and attorneys' fees and costs for the discrimination and lack of accommodation they suffered.

25.     Defendants' treatment of the Plaintiffs at its October 28, 2021 hearing violated each of the Plaintiff's constitutional right to privacy and right to individual dignity.  Mont. Const. Art. II, Sec. 10.

## JURISDICTION AND VENUE

26.     Plaintiffs' claims arise under the Americans with Disabilities Act,

§ 42 U.S.C.A. § 12101, et seq. ["ADA"], the Rehabilitation Act, 29 U.S.C.A.

§ 701, et seq., and the Federal Declaratory Judgments Act, 28 U.S.C.A. § 2201, et

seq., and accordingly this Court has jurisdiction pursuant to 28 U.S.C. § 1331 and

§ 1343(a)(3) & (4).  Plaintiffs' also have a claim that arises under Art. II, Sec. 10

of the Montana Constitution, which this Court has supplemental jurisdiction over

pursuant to 28 U.S.C. § 1367.

27.     Venue is proper in the Federal District Court Montana, Missoula

Division pursuant to 28 U.S.C. § 1391, and D. Mont. L.R. 3.2(b).

## THE PARTIES

28.     Plaintiffs incorporate the allegations stated in the preceding

Paragraphs, above, as if fully restated herein.

### Lt. Col. (Ret.) Tim A. Gardipee

29.     Tim A. Gardipee, Lt. Col. (Ret.), is an individual residing in Missoula,

Montana and is a qualified member of two federally recognized Native American

Tribes (the Fort Belknap Assiniboine and Gros Ventre and Turtle Mountain

Chippewa.  He is of suitable age and capacity to bring this action.  (Doc. 6 at ¶¶ 1 -

3).

30.     Lt. Col. (Ret.) Gardipee is a person with a disability as that term is defined by the ADA.  42 U.S.C. § 12132; 28 C.F.R § 35.108(a)(1).  His disability is the result of a neurological vaccine injury (Transverse Myelitis C-4 Paralysis) due to complications from a previous military parachute crash landing in 2005. (Doc. 6 at ¶¶ 4, 6-8).

31.     Lt. Col. (Ret.) Gardipee is wheelchair bound.  His disabilities preclude him from engaging in major life activities, including kneeling, standing, walking (he is unable to stand or walk without a walker, and then only momentarily) and pulling, and his constitutionally protected right to archery hunt during Montana's regular archery season, a sport he enjoyed for years prior to his injuries.  He is physically unable to operate archery equipment allowed by FWP.  (Doc. 6 at ¶¶ 4, 11-13).

32.     Lt. Col. Gardipee's hunting history, injuries and other testimony supporting this Amended Complaint are included in the Gardipee Declaration filed on August 24, 2021. (Doc. No. 6).

**Bruno Friia**

33.     Bruno Friia ["Friia"] is an 80-year-old individual residing in Missoula, Montana.  He is of suitable age and capacity to file this suit.  (Doc. 5 at ¶¶1 - 2).

34.    Mr. Friia is a person with a disability as that term is defined by the ADA.  42 U.S.C.S. § 12132; 28 C.F.R § 35.108(a)(1).

35.    Mr. Friia's disability is a result of multiple rotator cuff surgeries. making pulling and properly holding a bow, even a modified bow, impossible or extremely and unreasonably difficult, and his disability prevents him from engaging major life activities including his physical ability to pull and properly hold archery equipment allowed by the State and FWP, and his constitutionally protected right to hunt during Montana's archery season, an activity he engaged since 1964.  (Doc. 5 at ¶¶3 - 5).

36.    Mr. Friia's hunting history, injuries and other testimony supporting this Complaint are included in the Friia Declaration filed on August 24, 2021. (Doc. No. 5).

**<u>Brad Molnar</u>**

37.    Brad Molnar is individual residing in Billings, Montana.  He is an elected official serving in the Montana State Senate but appears in this action in his individual capacity and not his official capacity.  He is of suitable age and capacity to file this suit.  (Doc. 8 at ¶¶1 - 2).

38.    Brad Molnar is a person with a disability as that term is defined by the ADA.  42 U.S.C.S. § 12132; 28 C.F.R § 35.108(a)(1).

39.     Mr. Molnar's disability is a result of a devastating horse-riding accident that resulted in significant and progressive shoulder damage making pulling and properly holding a bow, even a modified bow, impossible or extremely and unreasonably difficult.  (Doc. 8 at ¶¶3 - 4, 21-23).

40.     Mr. Molnar's disability precludes him from engaging in major life activities, including pulling and properly holding archery equipment authorized by the State of Montana and FWP, and his Constitutionally protected right to during Montana's archery season, a sport he enjoyed since his youth but can no longer enjoy because of his injuries.  He is physically unable to operate archery equipment allowed by FWP.  (Doc. 8 at ¶¶ 4, 21-23).

41.     Mr. Molnar's hunting history, injuries and other testimony supporting this Complaint are included in the Molnar Declaration filed on August 24, 2021. (Doc. No. 8).

**David Helmers**

42.     David Helmers is individual residing in Plentywood, Montana.  He is of suitable age and capacity to file this suit.  (Doc. 7 at ¶¶ 1 - 2).

43.     David Helmers is a military veteran who carries a 100% disability rating.  He is a person with a disability as that term is defined by the ADA.  42 U.S.C.S. § 12132; 28 C.F.R § 35.108(a)(1).

44.     Mr. Helmers' disability is a result of two cervical spine surgeries (four level with metal plate and screws, front and rear), one rotator cuff surgery, one low back surgery, one knee replacement, one knee scope and a dorsal column stimulator implant, and carpal tunnel surgery on both hands.  (Doc. 7 at ¶3).

45.     Mr. Helmers' disability precludes him from pulling more than eight (8) pounds vertically or horizontally which are essential and major life activities and physical requirements necessary to operate a recurve or compound bow precluding him from exercising his Constitutionally protected right to during Montana's archery season, a sport he enjoyed since the late 1960s, but can no longer enjoy because of his injuries.  He is physically unable to operate archery equipment allowed by FWP.  (Doc. 7 at ¶¶ 5-9).

46.     Mr. Helmers' hunting history, injuries and other testimony supporting this Complaint are included in the Helmers Declaration filed on August 24, 2021. (Doc. No. 7).

## COUNT ONE
### DECLARATORY JUDGMENT AND CLAIM FOR DAMAGES
### (REHABILITATION ACT & AMERICANS WITH DISABILITIES ACT)

47.     Plaintiffs incorporate the allegations stated in the preceding Paragraphs, as if fully restated herein.

48.    The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C.A. § 12102(1)(A); 28 C.F.R § 35.108(a)(1).

49.    The Rehabilitation Act provides in relevant part that "[n]o otherwise qualified individual with a disability in the United States … shall solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…."  29 U.S.C.A. § 794(a).

50.    The procedures and remedies under the Rehabilitation Act parallel those of the ADA and the jurisprudence of each can be used to interpret the other.

51.    Major life activities "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."  42 U.S.C. § 12102(2).

52.    Hunting and fishing are recognized "major life activities" for Montanans and as such are afforded Constitutional and Legislative protection. Mont. Const. Article IX, Sec. 7; *see also*, Mont. Code Ann., § 87-1-107.

53.    Congress expressly intended that the definition of "disability … be construed in favor of broad coverage of individuals" under the ADA.  42 U.S.C.A. § 12102(4)(A).

54.    The State of Montana and FWP are "public entities" within the meaning of the ADA.  42 U.S.C.A. § 12131(1).

55.    A "qualified individual with a disability" as that term is defined by the ADA is an "individual with a disability who, with or without reasonable modifications to rules, policies, or practices … meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by the public entity."  42 U.S.C.A. § 12131(2).

56.    The ADA provides that "[s]ubject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C.A. § 12132; *see also* Rehabilitation Act, 29 U.S.C.A. § 794(a).

57.    It is incumbent on the State of Montana and FWP to provide reasonable accommodations to disabled individuals, including Plaintiffs, whose disability precludes them from engaging in major life activities, including those recognized by the ADA and Rehabilitation Act which prevent them from "participation in or be denied the benefits of the services, programs, or activities of a public entity," and including archery hunting during Montana's regular archery season.  42 U.S.C.A. § 12132; Rehabilitation Act, Act, 29 U.S.C.A. § 794(a); 28 C.F.R. § 35.130(b)(7)(i).

58.     An accommodation allowing Plaintiffs and other similarly situated disabled hunters who cannot use other allowed archery modifications to use a crossbow during Montana's regular archery season is reasonable under the circumstances.

59.     The use of a crossbow by those disabled individuals, including Plaintiffs, who because of their disabilities are unable to utilize archery equipment allowed by the State of Montana and FWP ("longbow, flatbow, recurve bow, compound bow, or any combination of these designs,") is an accommodation akin to the example set forth in 28 C.F.R. § 35.104(3) ("Acquisition or modification of equipment or devices.")

60.     Accommodating the limitations of individuals who have difficulty with grasping and squeezing is very commonplace.  For example, under the ADA Accessibility Guidelines public accommodations must replace doorknobs with door handles that can be push opened without a tight grasping and squeezing maneuver. *See,* 2010 ADAAG Advisory 404.2.7.  Similarly, operable parts of equipment must not require more than five (5) pounds of strength. *See,* 2010 ADAAG 309.4.

61.     Authorization to use the Crossbow is a necessary change in Defendants' policies, procedures, or rules relating to authorized archery equipment

available to disabled Montana archery hunters unable to utilize the archery equipment currently authorized by Defendants.

62.    The State of Montana has not, despite requests from each of the Plaintiffs, provided Plaintiffs or other similarly situated disabled individuals, with reasonable accommodations that would allow Plaintiffs to archery hunt in the regular archery season.  (Doc. 6 at ¶¶15-16, 30-32; Doc. 8 at ¶¶10-11, 24-28, 33; Doc. 5 at ¶¶11-12, 30-32; Doc. 7 at ¶¶11-12, 29-33).

63.    Defendants, by refusing reasonable accommodations (both by existing regulation and by the Legislatures refusal to pass legislation that would provide reasonable accommodations) including the use of crossbows during Montana's regular archery season to Plaintiffs and other similarly situated disabled individuals, violated and continues to violate the provisions of Mont. Const. Article IX, Sec. 7, the Rehabilitation Act, 29 U.S.C.A. § 701, et seq., and the Americans with Disabilities Act and its accompanying Federal regulations.

64.    The State of Montana uses eligibility criteria that tend to screen out people with disabilities.  28 C.F.R. § 35.130(b)(8).  Specifically, by not permitting the use of alternative auxiliary aids or services, the State of Montana is impermissibly screening out individuals with disabilities, including Plaintiffs.

65.    The State of Montana and FWP receive Federal financial assistance through the Pittman-Robinson Restoration Act applicable to its hunting statutes

and regulations, including Federal assistance for public land use.  16 U.S.C.A.,
§§ 669, et seq.

66.     By virtue of its receipt of Federal assistance, neither the State of
Montana nor FWP are protected by immunity from the action stated in this
Complaint.  42 U.S.C.A. § 12132; 42 U.S.C.A. § 2000d-7.

67.     Both by existing statutes and regulations, and by the Legislature's
failure to pass legislation that would have provided reasonable accommodation, the
State of Montana and FWP have acted with deliberate indifference to Plaintiffs'
disabilities that preclude them from utilizing archery equipment accepted by FWP
and the Commission and by refusing reasonable accommodations to Plaintiffs that
would allow them to participate archery hunting during the regular archery season.
The State of Montana and FWP acted, or in the case of Plaintiffs, refused to act
with full knowledge that there was a substantial likelihood that they were
infringing on a federally protected right, and were provided notice by each of the
Plaintiffs that each was in need of a reasonable accommodation.

68.     This action raises and recognizes the existence of an actual case and
controversy regarding Defendants' adherence to the ADA and its accompanying
regulations.

69.     Plaintiffs are entitled to a judgment from this Court declaring that
Defendants' actions in failing to provide reasonable accommodations (the use of a

crossbow) to allow Plaintiffs the ability to enjoy a major life event guaranteed and protected by Mont. Const. Art. IX, Sec. 7 (archery hunting during Montana's regular archery season) violate the Rehabilitation Act, the ADA and accompanying regulations.  28 U.S.C.A., § 2201.

70.     Plaintiffs are entitled to nominal or compensatory damages and other remedies authorized by Congress resulting from the Defendants' deliberate indifference to Plaintiffs' federal rights protected by the Americans with Disabilities Act, all in an amount to be proven at trial.  42 U.S.C.A. § 12133; 29 U.S.C.A. § 794(a).

71.     Plaintiffs are entitled to recover their reasonable costs, expenses and attorney fees as a result of Defendants' violation of the Americans with Disabilities Act.  42 U.S.C.A. § 12205.

## COUNT TWO
### (PERMANENT INJUNCTION)

72.     Plaintiffs incorporate the allegations stated in the preceding Paragraphs, as if fully restated herein.

73.     The right to hunt and fish are rights recognized and protected by Montana's Constitution.  Mont. Const. Article IX, Sec. 7.  The Montana Legislature purports to afford Montanans the same rights and protections guaranteed by the Montana Constitution.  Mont. Code Ann., § 87-1-107.

74.     Montana also constitutionally recognizes individual dignity and the sacrifices of military personnel, including veterans, and especially disabled veterans.  Mont. Const. Art. II, Sec 35.

75.     Despite Plaintiffs' requests for reasonable accommodations to mitigate the impact of Defendants' rules and regulations prohibiting Plaintiffs' use of crossbows during Montana's regular archery season, Defendants have violated the provisions of Mont. Const. Article IX, Sec. 7, Mont. Const. Art. II, Sec 10 and 35, the Rehabilitation Act and the Americans with Disabilities Act and accompanying Federal regulations.

76.     Plaintiffs each suffer a "disability" as that term is defined by the ADA and its accompanying regulations (42 U.S.C.A. § 12102(1)(A); 28 C.F.R § 35.108(a)(1); they are each, because of their disabilities deprived of "major life activities as that term is defined by the ADA (42 U.S.C.A. § 12102(2)(A) – kneeling, standing, pulling - that prevent them from engaging in the benefits of the services, programs, or activities provided by the State of Montana and FWP, and are further being deprived of a "major life activity" guaranteed by the Montana Constitution and legislative enactments.  Mont. Const. Article IX, Sec. 7; *see also*, Mont. Code Ann., § 87-1-107.  Defendants are "public entities" within the meaning of the ADA.  42 U.S.C.A. § 12131(1).  Each of the Plaintiffs is a "qualified individual with a disability" as that term is defined by the ADA.  42

U.S.C.A. § 12131(2).  And despite requests from each Plaintiff, Defendants have

failed and refused to provide Plaintiffs with a "reasonable accommodation" that

would allow them, like all other Montana archery hunters, to participate in

Montana's regular archery season.  42 U.S.C.A. § 12132; 28 C.F.R. §

35.130(b)(7)(i).

77.    Plaintiffs are likely to suffer irreparable harm in the absence of

injunctive relief because of Defendants' violation of the Rehabilitation Act and the

ADA by precluding Plaintiffs through Defendants' refusal to provide reasonable

accommodations to compensate for Plaintiffs' inability to perform major life

activities as a result of their disabilities (kneeling, standing, pulling, and the like),

and from their inability to enjoy Montana's constitutionally protected major life

event, archery hunting during Montana's regular archery season, a sacrosanct right

of all Montanans; by Defendants' violation of the ADA by their refusal to provide

reasonable accommodations (the use of crossbows) that would allow Plaintiffs to

enjoy, like all other Montanans, the ability to archery hunt during Montana's

regular archery season, particularly during the 2022 regular archery season; by the

Montana Legislature's failure to pass proposed legislation that would have

provided reasonable accommodation; and with respect to Plaintiffs Gardipee and

Helmers, by depriving them of their constitutionally protected status as military

veterans. Mont. Const. Art. II, Sec 35.

78.     The balance of equities related to affording Plaintiffs Permanent Injunctive Relief is strongly tipped in Plaintiffs' favor.  Each Plaintiff, because of his disability and loss of ability to engage in certain major life activities (kneeling, standing, pulling, and the like) and because of Defendants' refusal to accommodate reasonable requests, is unable to participate in another major life event – the ability to archery hunt during Montana's regular archery season – a right protected by Montana's Constitution.  Mont. Const. Article IX, Sec. 7.  The balance of equities is further tipped in Plaintiffs' favor as a result of Defendants' violation of the Rehabilitation Act and the ADA, despite requests for reasonable accommodation by each of the Plaintiffs.

79.     Plaintiffs request that this Court issue a permanent injunction enjoining Defendants, and all of their agents, servants, employees, attorneys, and those persons in active concert or participation with them who receive actual notice of said injunction by personal service or otherwise, from interfering with Plaintiffs' ability to use crossbows during the regular archery season as a reasonable accommodation to them allowing them to enjoy a major life event available to all Montanans – archery hunting during Montana's regular archery season.

80.     To the extent that there is any question about how the State of Montana and FWP will be able to "screen" qualifying applicants, the State already has a procedure utilized for determination of disability that is readily adaptable to

certifying a disabled archery hunter's inability to use authorized archery equipment but who is able to use a crossbow.  Mont. Code Ann., § 87-2-803; Mont. Admin. R. 12.3.106 (2000).

### COUNT THREE
### (VIOLATION OF MONTANA'S CONSTITUTIONAL RIGHT TO PRIVACY)
### (MT CONSTITUTION ARTICLE II §10)

81.    Plaintiffs incorporate the allegations stated in the preceding Paragraphs as if fully restated herein.

82.    Montana's Constitution protects privacy, providing that "[t]he right of individual privacy is essential to the wellbeing of a free society and shall not be infringed without the showing of a compelling state interest." The right of privacy provides for autonomy and informational privacy.

83.    Violations of constitutional rights by public agencies constitute immediate irreparable injury to the Plaintiffs as a matter of law.

84.    Defendants used their public agency positions, offices, and/or government status to wrongfully intrude on and expose Plaintiffs' private health care and medical information at the October 28, 2021 hearing by, among other ways:

      a.    Intentionally circumventing internal and legal protocols that protect against the wrongful dissemination of private information;

b.      Intentionally misrepresenting intentions at official proceedings in a manner that directly impacted Plaintiffs rights and expectations of privacy;

c.      Obtaining and releasing information pertaining to the Plaintiffs in which the Plaintiffs had a reasonable expectation of privacy;

d.      Intentionally and negligently failing to adhere to internal and legal protocols that protect against the wrongful dissemination of private information;

e.      Intentionally disseminating the Plaintiff's private information for public view.

85.   Defendants' wrongful intrusion procured the Plaintiffs' private information to which they had an expectation of privacy in because, among other reasons, they were:

a.      Communications involving personal medical conditions and files, which the Defendants had a duty to protect;

b.      The meeting was open and public and entirely designed and controlled by Defendants; and

c.      The purpose of the meeting was misrepresented to Plaintiffs and misconstrued by acts of the Defendants during the process and other events directly related to the proceeding; and

d.      The manner in which the proceeding occurred on October 28, 2021 did not adhere to the conditions of practice, policy or law.

86.    Defendants without cause, compelling reason or acknowledgement violated the privacy clause in the Montana Constitution. (Mont. Const. Art. II, Section 10).  The public interest is directly served by upholding the individual dignity and privacy provisions of the Montana Constitution when weighing the express societal importance of those fundamental provisions.

87.    Defendants' wrongful intrusion outraged Plaintiffs and caused mental suffering, shame, and humiliation, among other things.

88.    Plaintiffs are entitled to recover nominal and compensatory damages resulting from Defendants' constitutional violations as allowed by statute, in equity or common law in an amount to be proven at trial.

## COUNT FOUR
### (ATTORNEY FEES)

89.    Plaintiffs incorporate the allegations stated in the preceding Paragraphs as if fully restated herein.

90.     The Court should exercise the discretion conferred on it by Congress and include in its Order an award of Plaintiffs' reasonable costs, expenses and attorney fees incurred in prosecuting this action.  42 U.S.C.A. § 12205; 29 U.S.C.S. § 794a(b); 28 C.F.R. § 35.175.

WHEREFORE, Plaintiffs pray for relief as follows:

1.     That as to Count One and Count Three, judgment be entered against Defendants and in favor of Plaintiffs for Defendants' violation of the provisions of the Americans with Disabilities Act, Rehabilitation Act, and Plaintiffs' Constitutional Right to Privacy pursuant to Montana Constitution Article II, Section 10, and awarding Plaintiffs nominal and compensatory damages, as appropriate, together with their reasonable costs, expenses and attorney fees incurred in prosecuting this action;

2.     That as to Count Two, the Court issue a Permanent Injunction enjoining Defendants, and all of their agents, servants, employees, attorneys, and those persons in active concert or participation with them who receive actual notice of said Permanent Injunction by personal service or otherwise, from interfering with Plaintiffs' ability to use crossbows during the regular archery season as a reasonable accommodation to them allowing them to enjoy a major life event available to all Montanans – archery hunting during Montana's next regular archery season , and in subsequent regular Montana archery seasons.

3.     That as to Count Four, the Court should exercise the discretion conferred on it by Congress and include in its Order an award of Plaintiffs' reasonable costs, expenses and attorney fees incurred in prosecuting this action.

4.     That the Court award Plaintiffs their reasonable costs expenses and attorney fees incurred in prosecuting this action as may be allows by statutes referenced above, the Federal Rules of Civil Procedure, the Montana Local District Court Rules, or as a matter of equity.

5.     That the Court grant Plaintiffs such additional and further relief as may be just and proper under the circumstances.

DATED this 3rd day of February, 2022.

ROCKY MOUNTAIN LAW PARTNERS, P.C.

/S/   *Bruce A. Fredrickson*
          Attorneys for Plaintiffs